FILED

2007 Sep-27  AM 11:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| ADALBERTO M. ANDRADE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ]        4:04-cv-02511-RBP-JEO |
| | ] |
| JAMES HAYES, SCOTT HASSELL, and | ] |
| EDDIE BLYTHE, | ] |
| | ] |
| Defendants. | ] |

## MEMORANDUM OPINION

The plaintiff, Adalberto M. Andrade, filed this *pro se* action pursuant to 42 U.S.C. §
1983, alleging that he was deprived of rights, privileges, or immunities afforded him under the
Constitution or laws of the United States of America while incarcerated at Etowah County
Detention Center ("ECDC").  The plaintiff names as defendants, Sheriff James Hayes, Chief
Scott Hassell, and Sgt. Eddie Blythe.  The plaintiff is seeking compensatory and punitive
damages for the violation of his constitutional rights.  Upon consideration, the court finds that the
action is due to be dismissed with prejudice.

## I.  PROCEDURAL BACKGROUND

On April 14, 2005 , the court entered an order for special report directing that copies of
the complaint in this action be forwarded to each of the named defendants and requesting that
they file a special report responding to the factual allegations of the complaint.  The defendants
were advised that the special report could be submitted under oath or accompanied by affidavits
and, if appropriate, would be considered as a motion for summary judgment filed pursuant to
Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE.  By the same order, the plaintiff was

advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished to rebut the matters presented by defendants in the special report.  The plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

On June 20, 2005, the defendants filed their special report attaching documents and affidavits of defendants Blythe, Hassell, and Hayes.  (Doc. 15).  In response to the defendants' Special Report, the plaintiff filed a motion to amend or correct, which contained objections to the defendants' Special Report.  (Doc. 17).  Thereafter, the court entered an order notifying the plaintiff that the defendants' Special Report would be construed as a motion for summary judgment.  That order advised the plaintiff of the provisions and consequences of any default or failure to comply with FEDERAL RULE OF CIVIL PROCEDURE 56, *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985), and granted the plaintiff twenty days in which to file any additional response.  The plaintiff did not file any further response.

## II.  SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats &*

2

*Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).

### III.  DISCUSSION

### A.  Plaintiff's Allegations

Applying the above standard to the facts before the court, the following facts are undisputed or, if disputed, are taken in a light most favorable to the plaintiff.  The plaintiff is an immigration detainee who was housed at the ECDC at the time of the incident about which he complains.  (Doc. 1).  In May 2004, the plaintiff requested documents from the Fifth Circuit Court of Appeals.  The court sent the documents to the plaintiff at the ECDC.  The package was delivered to the ECDC sometime between June 9, 2004, and June 18, 2004, but not delivered to

the plaintiff.  When the package had not been delivered by July, the plaintiff filed a reply brief in

his case without having an opportunity to review the record.  (*Id*.).  On July 16, the plaintiff filed

a grievance regarding the missing package.  The plaintiff maintains that the defendants

deliberately failed to deliver his package to him in retaliation for complaints the plaintiff made

about the conditions in the ECDC.

> The defendants have submitted evidence, via affidavits, stating that
> [i]t is the policy of the Etowah County Detention Center that Detention Center
> Personnel ensure that detainees send and receive correspondence in a timely
> manner, subject to limitations required for safety, security, and orderly operation
> of the facility.  It is the policy of the Etowah County Detention Center that
> Detainee correspondence and other mail shall be delivered to the detainee and to
> the postal service on a regular basis.  Incoming correspondence must be
> distributed to detainees within twenty-four (24) hours of receipt at the facility.
> Outgoing correspondence must be delivered to the postal service no later than the
> day after it is received by facility staff or placed by the detainee in a designated
> mail depository, excluding weekends and holidays.  It is the policy of the Etowah
> County Detention Center that, as a routine matter, incoming mail be distributed to
> detainees on the day received by the facility.  When mail is received that has a
> tracking number it must be signed for when received in the jail.

(Doc. 15, pp. 1-2, citing Affidavits of Sheriff James Hayes, Chief Scott Hassell, and Sgt. Eddie

Blythe).  Chief Hassell states that, when he learned of the missing mail, an investigation was

conducted, and he contacted the Fifth Circuit Court of Appeals and advised them of the situation.

### B.  Respondeat Superior

The plaintiff names Sheriff James Hayes because "Hayes . . . is the Sheriff of Etowah

County, in Gadsden, Alabama, [and] is legally responsible for the overall operation of the

[ECDC]."  (Doc. 1 at p. 2).  The plaintiff does not allege that Sheriff Hayes was personally

involved in the incident about which he complains.  Instead, the plaintiff simply attempts to

implicate Sheriff Hayes through the concept of *respondeat superior*.  However, "[t]here is no

*respondeat superior* liability under § 1983." *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir.

1995) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978) and

*LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994)).

"The standard by which a supervisor is held liable in her individual capacity for the

actions of a subordinate is extremely rigorous." *Braddy v. Florida Dept. of Labor and*

*Employment Security*, 133 F.3d 797, 802 (11th Cir. 1998).  Supervisory personnel may be held

accountable for the constitutional violations of their subordinates upon proof that they (1) were

directly involved in the wrongdoing; (2) failed to remedy a wrong after learning of it through

report or appeal; (3) created or allowed a policy under which the violation occurred; or (4) were

grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith,*

781 F.2d 319, 323 (2d Cir. 1986).  Absent some allegation that Sheriff Hayes knew of,

sanctioned, participated in or was otherwise "affirmatively link[ed]" to the acts here complained

of, the claim against defendant Hayes is insufficient to state a cause of action under § 1983.

Accordingly, this action is due to be dismissed as to defendant James Hayes, Sheriff of Etowah

County.[1]

## C.  Access to the Courts

The plaintiff did not receive the record on appeal even though it was delivered to the

ECDC.  On June 18, 2004, the plaintiff received a letter from the court requesting the return of

the court record.  On July 3, 2004, the court again requested the return of the documents and

informed the plaintiff that his case could not proceed until the record was returned.  (Doc. 1).

---

[1]Any attempt by the plaintiff to hold defendants Hassell and Blythe liable as supervisors must also fail because, as stated *infra*, the doctrine of *respondeat superior* is unavailable in actions brought under § 1983.  *Monell,* 436 U.S. at 690-92; *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995).

The plaintiff states that as a consequence of the loss of the record, he could not properly brief his appeal or provide sufficient evidence to support his claim. (Doc. 1 at p. 6). The plaintiff did file a reply brief in July 2004, without the benefit of the record. (*Id*.). He maintains that because the loss of his legal mail "implicates his access to the court and result[ed] in the dismissal of his meritorious appeal before the Fifth Circuit, this court should hold, consistent with the Supreme Court's holding in <u>Lewis v. Casey</u> that he has demonstrated 'actual injury' with[in the] meaning of the PLRA" (Doc. 17 at p. 7 (footnote omitted)).

The plaintiff relies on the Supreme Court decision in *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996), to support his claim that the defendants violated his constitutional right to access the courts when they lost his legal mail. It is now clear, however, that in order to prevail on a claim that his right of access to the courts has been violated, an inmate must establish prejudice, *i.e.*, that "his efforts to pursue a legal claim" were "hindered." *Id*. at 351. To establish such prejudice, an inmate "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id*.

Following *Lewis*, a "plaintiff must allege that the denial of access proximately caused some prejudice to a legal claim," in order to adequately state a denial of access to the courts claim. *Heisler v. Kralik*, 981 F. Supp. 830, 840 (S.D.N.Y. 1997). As the Court of Appeals for the Eleventh Circuit has explained:

With respect to access-to-court claims, *Lewis* clarifies that a plaintiff first must

show actual injury before seeking relief under *Bounds*.  *See Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir. 1998).  This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action.  *See id*. at 1445.  To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials.  *See id*. at 1446.  Therefore, in an access-to-courts claim, "a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the d

enial is systemic." *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam).  Rather, a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered his "efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights." *Id*.

*Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998).

A review of the docket sheet in the plaintiff's appeal shows that he was represented by an attorney who argued his case before a three judge panel of the Fifth Circuit Court of Appeals on June 8, 2005.[2]  A decision affirming the opinion of the lower court was filed on June 17, 2005.[3]  The plaintiff's claim that he was prejudiced by the failure of the defendants to deliver the court records to him is unsupported by the facts and is due to be dismissed.  While the plaintiff alludes to an inability to "provide sufficient evidence in support of his appeal," he does not provide any details to this court to show that he had information that he was unable to place before the court of appeals because he did not have the record on appeal.  (Doc. 1 at p. 6).  Additionally, he was assisted on the appeal, particularly for purposes of the oral argument, by counsel.  Accordingly,

---

[2]Various notations on the docket sheet confirm that a copy of the record was sent to the plaintiff on June 9, 2004.  After several requests for the return of the record and a call to the Fifth Circuit from Sheriff Hayes, the record was reconstructed on August 27, 2004.  Later, a notation on the docket sheet for April 26, 2005 reads, "Record on Appeal released to Attorney Rebecca L. Hudsmith for Appellant Adalberto Andrade. . . ." (*Andrade v. Gonzales*, 04-30247 (5th Cir.) Docket Sheet at p. 4).  On June 8, 2005, the following notation was made on the docket sheet: "Record on Appeal returned to 5CCA." *Id*. at p. 3.

[3]*Andrade v. Gonzales*, 134 Fed. Appx. 729, 459 F.3d 538 (5th Cir. 2006).

7

summary judgment is due to be granted on this claim.

### D.  Official and Individual Capacity of Defendants

The plaintiff is suing defendants Hayes, Hassell, and Blythe in their individual and official capacities.  These defendants are employees of the State Alabama and cannot be held liable for damages in their official capacities for their own acts or those of their employees because they enjoy Eleventh Amendment immunity.  Such officers are entitled to dismissal of any claims for damages brought against them in their capacities as such state officials.  The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.  *Edelman v. Jordan*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S. Ct. 347, 89 L. Ed. 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S. Ct. 185, 82 L. Ed. 2d 268 (1937).  Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100, 104 S. Ct. 900, 906-07, 79 L. Ed. 2d 67, 76-78 (1984).  To the extent they are sued in their official capacities, the suit against the defendants is a suit against the state.  There has been no consent or waiver in this action; thus, the defendants in their official capacities are absolutely immune from damages liability in this case.  The plaintiff may still be entitled to injunctive relief against one or more defendants in their official capacities.  *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

In order to prevail against the defendants in their individual capacities, the plaintiff must establish that (1) he held a constitutionally protected right; (2) he was deprived of that right;

(3) the defendants caused the deprivation; and (4) the defendants were acting under color of state law.  The defendants submitted affidavits in which they stated that they did not personally receive the documents and did not loss, misplace, or destroy them.  The plaintiff has failed to produce any facts to support his bald allegations that these defendants ever had any contact with the documents.  Thus, the plaintiff has failed to establish an essential element of his case, that the defendants caused the deprivation.[4]  Accordingly, the claims against these defendants are due to be dismissed.

### E.  Retaliation

Andrade alleges that defendants Hassell and Blythe intentionally and deliberately withheld the court records sent to him by the Fifth Circuit Court of Appeals in retaliation for the plaintiff complaining about food and prison conditions at the ECDC.  Defendants Hassell and Blythe jointly contend that the plaintiff's claims must fail because they had no personal involvement in the loss of the plaintiff's mail.

To state a retaliation claim, a prisoner must establish that (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct would likely deter a person of ordinary firmness from engaging in protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech.  *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

Even assuming Andrade had "affirmatively linked" the defendants to the loss of his mail,

---

[4]At the very most, the facts show nothing more than a case of negligence on the part of the personnel at ECDC. However, the law is clear that negligent conduct alone, absent any intentional government conduct does not give rise to a valid due process claim.  *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).  In *Daniels*, the United States Supreme Court held that the due process clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty, or property.  In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required. *Daniels*, 474 U.S. 327.

he has nonetheless failed to offer any evidence suggesting that the defendants' alleged actions were the result of his participation in the June 2, 2004, demonstration.  "[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech.  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (quoting *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989)).  "A prisoner can [therefore] establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'"  *Id*.

Here, the plaintiff has not pled sufficient facts from which the court can infer a retaliatory motive on the part of the defendants.  In his complaint, the plaintiff alleges the following chronology of events.  In May 2004, Andrade requested appeal records from the Fifth Circuit Court of Appeals in New Orleans, Louisiana.  After participating in a June 2, 2004, "peacefull [sic] demonstration," (doc. 1 at p. 6), over the bad food and conditions at ECDC, Andrade and two other detainees were placed in segregation accused of engaging in or inciting a riot.  During Andrade's stint in segregation, Andrade told Sgt. Blythe that he was awaiting appeal records after defendant Blythe supposedly inquired about the status of the plaintiff's appeal.  On June 9, 2004, the Fifth Circuit Court of Appeals forwarded the appeal records to Andrade at ECDC.  Sometime between June 9, 2004, and June 18, 2004, the records arrived at ECDC and were signed for at the front desk by Mary Billingsley.  The records were never delivered to the plaintiff.

From this chronology of events, the plaintiff avers that "the staff at [ECDC] intentionally and deliberately declined to deliver the package to him or to return it to the [Fifth Circuit] Court [of Appeals in] retaliation."  (Doc. 1 at p. 5).  While courts have inferred retaliation based on the close temporal proximity between the exercise of a constitutionally protected right and an

10

adverse action, the mere fact that a prisoner has previously exercised his right to free speech then suffered an injury does not alone necessarily allow an inference of a retaliatory motive on the part of prison officials.  Beyond pleading this chronology of events, the plaintiff has done no more than make conclusory allegations that the intentional loss of his appeal records was motivated by his having participated in the June 2, 2004, demonstration.  (*See* Doc. 17 at p. 10 ("In any event, the destruction of Andrade's mails was deliberately done because of his complaint or participation in a peaceful protest."); *Id*. at p. 11 ("Mr. Eddie Blith [sic], in collaboration with fellow Defendants, Sheriff Hayes, and the Chief, instructed their underling to deliberately withold [sic] or destroy Andrade's mail."); *Id*. at p. 13 ("Moreover, as noted above, Defendants together instructed its underling to destroy or withold [sic] the legal documents, because there is no way a 3 volumes records on appeal, of several hundreds of pages will just mysteriously disappear.").  He does not, however, assert any facts supporting these allegations which would supply a sufficient "causal link" between his participation in the June 2, 2004, demonstration and the loss of his mail.  It is well-established that "[c]laims alleging retaliation must be factual and mere conclusory allegations of unconstitutional retaliation will not suffice."  *Adams v. James*, 797 F. Supp. 940, 948 (M.D. Fla. 1992).  As such, because the plaintiff has merely alleged the ultimate fact of relation, he has failed to state a claim.  "Pleadings must be something more than an ingenious academic exercise in the conceivable." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) (*en banc*) (citation omitted).  The plaintiff's claim that Chief Hassell and Sgt. Blythe retaliated against him for complaining about the conditions in the ECDC is therefore due to be dismissed.

## IV.  CONCLUSION

Accordingly, for the reasons stated above the court concludes that the special report is due to be treated as a motion for summary judgment and, as such, be granted, and that all of the plaintiff's claims be dismissed with prejudice.  An appropriate order will be entered.

**DONE**, this 27th day of September, 2007.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**